# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| KENNETH PATTON, | : | Bankruptcy No. 06-11590DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is (1) the Amended Motion of the Chapter 13 trustee (the "Trustee") for Dismissal ("Dismissal Motion") of this Chapter 13 case; (2) the Debtor's Objection to Claim #2 (the "Objection") filed by Chase Manhattan Mortgage ("Chase"); and (3) the Debtor's request for confirmation of his Chapter 13 plan (the "Plan"). The Trustee contends that the Plan is grossly underfunded and confirmation is foreclosed on feasibility grounds. The claim that causes the underfunding is the mortgage arrearage reflected in the amended proof of claim filed by Chase in the amount of $21,664.34 ("Arrears Claim").[1] On February 21, 2007 an evidentiary hearing was held in connection with the disputed Arrears Claim. When it was concluded, the Trustee pressed the Dismissal Motion which, not surprisingly, was supported by Chase. For the reasons that follow, the Dismissal Motion is granted, it being apparent from the evidence elicited in connection with the Objection, that the Arrears Claim is too great to allow proposal of any feasible plan.

---

[1] The Chapter 13 plan is an arrears plan, proposing to cure all arrears over the life of the plan in order to reinstate the mortgage. The amended POC #2 gave Debtor further credit for a refund.

**BACKGROUND**

This is Debtor's second Chapter 13 case. The first case ("Prior Case"), filed on March 24, 2005, was dismissed on December 1, 2005 on the Trustee's motion to dismiss for failure to make payments.[2] During the Prior Case the Debtor filed an initial Chapter 13 plan that proposed to cure a default to Chase of $5,832.32. Exhibit M-1. On April 8, 2005, however, Chase filed a proof of claim ("POC #1") which stated the arrears to be $1,687.83, Exhibit D-1,[3] and Debtor thereafter amended his plan to adopt that lower amount. Doc. No. 14.

During the Prior Case Chase filed a motion from relief from stay ("MFR") on July 21, 2005 averring that Debtor had failed to tender post-petition payments from May through July which, together with late charges, equaled $4,170.15, exclusive of costs. Exhibit M-2. The MFR was settled by stipulation pursuant to which the Debtor agreed to the existence of

---

[2] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

This was the second motion to dismiss filed in the Prior Case for nonpayment. The first was filed on July 19, 2005 and withdrawn on September 15, 2005. Doc. No. 20. The second was filed one month later on October 13, 2005. Doc. No. 38.

[3] POC #1 did not indicate that there were any missed mortgage payments.

-2-

a post-petition delinquency of $3,040.68 consisting of missing payments of $1,225.80 for June through August, costs of $400 less a suspense balance of $1,036. Moreover he agreed that commencing September 1, 2005, he would supplement the regular mortgage payment of $1,225.80 with cure payments of $500.78. The Stipulation was approved by the Court on September 9, 2005. Docs. No. 28 and 32. On November 14, 2005, with the Trustee's dismissal motion pending, Chase certified default of the Stipulation. Exhibit M-4. The attached notice stated that Debtor had failed to make the September and October payments and that if $2,555.41 was not paid in ten days, default would be certified to the Court with a request for relief from stay. Exhibit M-3. However, before and within the cure period, Debtor sent three money orders for $1,000 (11/9/06), $732.29 (11/9/06) and $500 (11/27/06) (the "Cure Payments") which Chase returned to Debtor presumably as insufficient to cure the default. Nonetheless Debtor returned the Cure Payments to Chase which accepted and cashed the checks this time. Exhibits D-10, D-11, D-12. On December 1, 2006 the case was dismissed as stated above. Doc. No. 45.[4]

The second case was filed on April 19, 2006, four months after the dismissal of Case #1. Debtor could not say what mortgage payments were made from December through April and initially contended he was paid up prior to that date. He later conceded that he was two to three months in arrears with his mortgage at the time this case was filed in April

---

[4] It is the practice of the Court to hold the certificates of default for more than 10 days to make sure that there is not a satisfaction that we are not aware of which would necessitate vacating the order. In this case, in holding the proposed relief order beyond the ten day period, it actually was moot when entered on December 6, 2005 as the case had been dismissed. Doc. No. 47.

because his filing was intended to stop foreclosure which he believed would follow even though a sheriff's sale had not yet been scheduled.

On June 23, 2006 Chase filed a motion for relief in this case.[5] It came on for a hearing for the first time on July 11, 2006 and was continued and then withdrawn on September 14, 2006. A series of consensual continuances were also granted to the pending Dismissal Motion and contested confirmation while the Debtor and Chase attempted to reconcile their payment records.[6] That effort was ultimately unsuccessful, and Debtor maintains his position that he still does not know what he owes Chase but is certain it is less than Chase contends and no more than the equivalent of five payments. Since monthly payments have been $1,225.80, Debtor appears to acknowledge an Arrears Claim of $6,129 exclusive of late charges and costs which he also contests. The only specific objection relates to sheriff's costs and is based on Debtor's contention that there was only one, not two sheriff's deposits, as appears to be indicated on POC #2.

---

[5] Chase averred that no mortgage payments were made in May and June. Debtor denied missing the June payment and stated the May payment was not made because he did not know when he was supposed to start making payments. Doc. No. 32.

[6] My bench notes indicate a one month continuance granted on October 16, 2006 for Debtor to provide evidence of a wage order (he did) and to file an amended plan to address the plan underfunding (he did not); a further one month continuance on November 18, 2006 to allow Debtor to review Chase's payment history in connection with his Objection; adjourned hearings on December 7 and 14, 2006 because of conflicts of Debtor's counsel David A. Scholl who was in another court when this case was called; and a further adjournment on December 21, 2006 by agreement of Chase and the Trustee to allow Debtor time to trace his 2004 payments to Chase given his belief that Chase's payment history was incorrect. That research was completed as of the February 21 hearing and yielded nothing. The only payments that were introduced into the record as not having been credited were the three November 2005 checks which Chase states were reflected on its payment history. Debtor's counsel agrees that his review of the document supports that statement but disputes whether the amounts were deducted from the POC. Chase, as is the practice of most of the mortgagees in this court, had no witness to authenticate the payment history and thus did not seek to introduce it assuming Debtor's counsel would voice a valid objection to its admission.

The Plan Debtor has filed in this case provides for 36 payments of $150 per month or a plan funding of $5,400. Doc. No. 15. The claims register evidences the secured claims of Hidden Forest Homeowners Association with an arrears amount of $2,425.04 and PFHA-HEMAP, the second mortgagee, with an arrears claim of $400.[7] The Plan is intended to provide for the payment of these and the Arrears Claim plus the Trustee's commission and counsel fees of $2,074. According to the Trustee, however, there only remains about $2,000 available to be paid toward the Arrears Claim after the other two arrears claims, counsel fees and the Trustee's commission are paid so the Plan is grossly underfunded.

The Debtor testified that he could not afford to pay the Arrears Claim of $21,664.34 and while he can afford to pay the current mortgage, could not state what he could pay in addition to the $150 plan payment. Brenda Morris, Debtor's life partner who handles the couple's finances, testified otherwise. She stated that she believed that Debtor could allocate $100 per week versus the present $37.50 to the Trustee and she could allocate an additional $50 per month when the weather breaks and she works more hours. That would increase the plan payment to $300 per month. Upon inquiry from the Court, Ms. Morris reported that the couple have no savings and only $20 in their joint checking account after paying the mortgage the prior day.

---

[7] The second mortgage has not been paid since the case was filed. According to the proof of claim, the payments are $200 per month.

**DISCUSSION**

<u>A.</u>

Chase has filed POC #2 contending its Arrears Claim is $21,664.34 which Debtor acknowledges is beyond his reach to satisfy over the life of his Plan.[8]  Thus, I shall begin with consideration of the Objection since the amount of the Arrears Claim will determine whether it is possible for Debtor to propose a confirmable plan.

Bankruptcy Rule of Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes <u>prima</u> <u>facie</u> evidence of the validity and amount of the claim.  <u>Amatex Corporation v. Aetna Casualty & Surety Co.,</u> <u>et al.</u>, 107 B.R. 856, 870 (E.D. Pa. 1989); <u>In re Wall to Wall Sound & Video, Inc.</u>, 151 B.R. 700, 701 (Bankr. E.D. Pa. 1993).  Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force.  <u>In re Wells</u>, 51 B.R. 563, 566 (Bankr. D. Col. 1985).  POC #2 has been filed in accordance with applicable rules of procedure and is therefore <u>prima</u> <u>facie</u> evidence of the validity and amount of the Arrears Claim, a legal conclusion not challenged by Debtor.  Accordingly, Debtor as the objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim.  <u>Id.</u>  "[T]he objector must produce evidence which, if believed, would refute at least one of the allegations that

---

[8] Curiously Debtor's counsel did not mention that the term of the proposed plan was 36 months and Debtor could bring more money to the table by extending it for an additional two years to 60 months.  The Trustee in argument assumed the available cash based on a 36 month plan.  Since there does not appear to be an impediment to extending the plan, I will for the purpose of my ultimate conclusion measure feasibility by that period.

-6-

is essential to the claim's legal sufficiency." In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). If the objecting party succeeds in overcoming the prima facie effect of the proof of claim, the ultimate burden of persuasion then rests on the Claimant. Allegheny International, 954 F.2d at 174; Wall to Wall Sound, 151 B.R. at 701. The threshold question then is whether the Debtor has rebutted the prima facie effect of the proof of claim.

     Debtor's seeks to rebut POC #2 by pointing to POC #1 in the Prior Case which asserted arrears in the amount of $1,687.83 as of March 25, 2005 consisting of late charges and costs but no monthly mortgage payments. Debtor contends that this inconsistent document undermines the evidentiary effect of POC #2. Chase has responded to that part of the Objection by proving that there were unpaid mortgage payments at the time of the filing of the Prior Case and accordingly the arrears reflected in POC #1 were simply misstated. Chase elicited testimony from the Debtor concerning his payment history. Specifically, he testified that the Prior Case was filed because he was behind in his payments and was concerned that Chase would take action toward foreclosure. While Debtor testified on direct that he had no arrears in the Prior Case, on cross examination he acknowledged he was two payments in arrears. He also stated that he had given his counsel his financial information in connection with the Prior Case and from that, counsel had prepared his Chapter 13 plan. While Debtor could not recall it presently, he had reviewed the proposed plan prior to its being filed. That document states that the Debtor intends to cure a default to Chase of $5,832.32. Exhibit M-1.

Based on the erroneous POC #1, the familiar contention of debtors that they have not received credit for all their payments has been given more credence by Chase which consented to numerous extensions to allow the Debtor to trace his payments back to 2004 and 2005 against the payment history it provided of his mortgage loan. Notwithstanding that exercise Debtor could not state what he believes is due but only that it was less than the Arrears Claim filed. Without any substantiation, he speculated that he was at most five months in arrears. He acknowledged that a search of his bank records revealed that except for the Cure Payments, no other payments had been made that were not credited to his account as reflected by the payment history. However, with respect to the Cure Payments, Debtor's counsel acknowledged that they were credited to Debtor's payment history but contended that it did not mean that they were reflected in POC #2.

A review of POC #2 indicates monthly payment arrears from March 2005 through April 2006. The Cure Payments were made in response to a certificate of default of the Stipulation in the Prior Case for missed payments in October and November 2005. While the Cure Payments were slightly short of the amount due, it appears that Chase accepted them, Thus in the absence of any evidence by Chase to the contrary, its claim for the full monthly payment for October and November 2005 is overstated by $2,232.29 as payments for these months were accepted contrary to the attachment to POC #2.

Of course, this analysis assumes that the proof of claim accurately states the months of the missed payments, and there is the rub. I take judicial notice from thirteen years of handling Chapter 13 cases that the regular business practice of mortgage companies is to

credit late payments to the earliest missed payment and not the month of payment.[9] That may explain why POC #2 shows only one unpaid monthly payment (March 2005) at the time Debtor filed the Prior Case and no payments made for fourteen consecutive months. However, since mortgage companies do not as a rule present a witness to support their proofs of claim, they can only hope that the debtor will be persuaded by their efforts to reconcile their payment history with the debtor's records. Most frequently, these types of objections are resolved amicably, and debtor's counsel usually accords the creditor ample time to provide a payment history which will be reviewed in good faith.[10] There is incentive for the debtor to do so if the goal of the bankruptcy case is to reinstate a defaulted mortgage. In the infrequent cases where no resolution can be reached, the mortgage company may be put to its proofs as here.[11]

---

[9] This practice engenders incredible confusion when a certification of default is issued alleging a current month default because the debtor's actual current payment has been applied to a prior missed month.

[10] The payment history usually indicates the date of the payment and the month to which it is applied. That detail is absent on proofs of claim and certificates of default.

[11] At times the mortgage companies' records (often from previous holders of the mortgage) are deficient. Absent evidentiary support for its claim, the burden of proof reaches the right result in these cases. At other times the Debtor simply does not have enough money to cure what appears to be a valid larger claim and has no incentive to discover the correct amount. By presenting the Debtor's self-serving testimony, the burden will be shifted to the creditor, usually an out of state mortgage company. In recognition of this fact and not wishing to incur the costs of flying a witness to testify, the mortgage company's counsel may try to prove his case through the debtor and documents. When adversary counsel insists on strict compliance with the rules of evidence, this is very difficult. A better practice is to request leave of court to elicit testimony to authenticate and explain documents by telephone or video conference which will be granted in appropriate circumstances.

Based on this record I conclude that the Debtor admits the Arrears Claim consists of five monthly payments and has shifted the burden back to Chase to prove the additional eight monthly payment arrears claimed.[12]

Debtor also objects to the Arrears Claim insofar as it seeks costs. In response to the Debtor's Requests for Production of Documents, Chase's counsel responded (the "Response") by supplying Debtor's counsel with copies of his law firm's invoices evidencing all claims for attorneys' fees and costs.[13] Exhibit M-6. As noted above, after review of the supporting documents, he continues to press an objection to the $2,000 sheriff sale expense. He does so because of the unexplained notation "(2)" which he reads to mean that there is a charge for two sales. Debtor's counsel then went on to elicit from the Debtor his recollection of only one sheriff sale. However, a review of the invoices which were provided to counsel provides another more logical explanation for the "(2)." It appears there were two deposits ($1,500 and $500) equaling $2,000, the normal and well established cost of a sheriff sale. Because there is no challenge to any other specific cost, all costs appear customary and reasonable and have been substantiated by invoices to Chase from its counsel, the Objection insofar as its contests the costs is overruled. Costs of $4,630.63 are allowed

---

[12] I accept Debtor's testimony not because he credibly established that only five payments were owed. In the face of the bankruptcy history of Case #1, Debtor's testimony that he was current in his mortgage payments and Chapter 13 payments when the case was dismissed is simply incredible. His statement that he does not know why his case was dismissed either evidences a short or faulty memory. His failure to be truthful with the Court undermined the veracity of his repeated assertion that he is but a mere five months in arrears with Chase but it was sufficient to put the number of payments at issue and that was Chase, not his, burden to prove.

[13] The Response with documentary attachment was filed on October 27, 2006. Doc. No. 57.

as part of the Arrears Claim. When added to unchallenged accrued late charges and the escrow shortage plus the five admitted mortgage payments equaling at least $6,127.80,[14] the Arrears Claim is at least $11,580.34. Because as noted below, an allowed claim of even this amount is beyond the reach of the Debtor, I need not struggle with the evidence to determine whether Chase has met its burden of proving any additional missed payments beyond the five admitted by Debtor.

### B.

In order to secure confirmation of a plan, the debtor must prove that he can make all payments under the plan and comply with the plan. 11 U.S.C. § 1325(a)(6). This is commonly known as the "feasibility" requirement. "To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan. The First National Bank of Boston v. Fantasia (In re Fantasia), 211 B.R. 420, 423 (1st Cir. BAP 1997). As with each of the § 1325 confirmation requirements, the burden is on the debtor to establish that the plan is feasible. Where as here, the Debtor has returned to the bankruptcy court for the second time to attempt to confirm a plan, that burden is heightened. In re Newton, 217 B.R. 1002, 1003 (Bankr. S.D. Ohio 1997).

As noted, the Dismissal Motion is based on the Trustee's view that the Plan is not feasible since it fails to pay all required claims. Exhibit M-1. Chase concurs, noting that the

---

[14] Since I don't know the dates of the admittedly missed payments, I have used the lowest amount, i.e., $1,225.56, for the mortgage payment which fluctuated slightly.

Plan does not provide for Chase's Arrears Claim.[15] On request of a party in interest, the court shall dismiss a Chapter 13 case "for cause," including unreasonable delay that is prejudicial to creditors, and denial of confirmation of a plan and a request for additional time for filing another plan. 11 U.S.C. § 1307(c)(1) and (3). Both these subsections are implicated here.

As noted above, the Plan is patently underfunded even giving effect to a reduced Arrears Claim. As the Trustee argued, after satisfying the uncontested secured claims of Hidden Forest ($2,425.04), PFHA-HEMAP ($400), Debtor's counsel ($2,074) and the Trustee's commission, there is merely a couple of thousand dollars left to pay Chase. The plan is simply not feasible, and confirmation shall be denied.

Faced with that eventuality, Debtor's counsel then contended that the plan payments could be increased under an amended plan. He then called Debtor's life partner, Brenda Morris[16] to rebut the Debtor's prior testimony that he could not afford to pay more than the current mortgage and his $150 monthly plan payment. Ms. Morris claimed that Debtor could afford to increase his plan payment from $37.50 to $100 per week and she could contribute an additional $50 per month when she got more hours this spring, increasing the plan payment from $150 to $300. This testimony is belied by reality. The couple have

---

[15] Chase also objects to the Plan insofar as it contains a form provision that completion of the plan effects a complete cure of all pre- and post-petition mortgage arrears and charges. Post-petition arrears are not paid under the Plan. A plan cannot be confirmed if it does not comply with the bankruptcy law. 11 U.S.C. § 1325(a)(1). As I have advised Debtor's counsel, I will not confirm a plan that contains this provision which is inconsistent with applicable law.

[16] Ms. Morris handles the couple's finances. While she was not offered as a witness in connection with the Objection to the Arrears Claim because she "gets confused," there was no reluctance to her testifying when it was apparent the Trustee's argument about feasibility was resonating.

$20 in their checking account after paying this month's mortgage and have not paid their second mortgage since the case was filed. There does not appear to be any cushion in their budget as Debtor originally acknowledged. In short, I do not find Morris' self-serving testimony credible.

The Debtor set his plan payment at $150 not because it will satisfy required claims (it does not) but because it is what he can pay without going into default to the Trustee. However, while I find no basis to conclude that Debtor can increase the amount of his monthly plan payment beyond $150, he can increase the duration from 36 to 60 months. See note 8 supra. If he makes this commitment, the total plan funding will grow from $5,400 to $9,000. However, even with this increase in funding, the Plan will still be underfunded. Chase's claim, based on the Debtor's Objection, has been fixed at more than this amount and this is without regard to the other claims designated in the Plan.

This is Debtor's second case. He has been under bankruptcy protection all but a few months for two years and is no closer to having a confirmed plan today than he was in the Prior Case. He has been accorded time to challenge Chase's claim but it is simply too large, even under the favorable terms of his testimony on the Objection, and his income too small. There is no justification for permitting a further plan which would serve no purpose but delay the inevitable to the prejudice of creditors. Accordingly, the Dismissal Motion is granted.

An Order shall be entered consistent with this Memorandum Opinion.

*Diane W. Sigmund*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: March 16, 2007

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| KENNETH PATTON, | : | Bankruptcy No. 06-11590DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 16th day of March, 2007 upon consideration of the Amended Motion of the Chapter 13 trustee for Dismissal ("Dismissal Motion") of this Chapter 13 case; (2) the Debtor's Objection to Claim #2 filed by Chase Manhattan Mortgage; and (3) the Debtor's request for confirmation of his Chapter 13 plan (the "Plan"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** and **DECREED** that:

1. Confirmation of the Plan is **DENIED** and no further Chapter 13 plan may be proposed.

2. The Dismissal Motion is **GRANTED**. This Chapter 13 case is **DISMISSED**.

*Diane W. Sigmund*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge